[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. FACTS
Founders Bank, a banking institution located in New Haven, commenced this action by writ, summons and complaint dated April 5, 1991 seeking to foreclose two mortgages on real property owned by the defendant Annette G. Belbusti securing two obligations, 1) an equity line agreement and promissory note in the principal amount of $100,000; and 2) a mortgage in the amount of $15,000. In each case the notes were signed by Annette G. Belbusti and her son John Belbusti. Further, in each case the mortgage deeds were signed by Annette G. Belbusti alone since she was the sole owner of the subject property located at 62 Conifer Drive, North Branford, Connecticut.
The signed notes were admitted as plaintiff's Exhibits A and E at the trial and the mortgages were admitted as plaintiff's Exhibit B and F at the trial. Also admitted at the trial as CT Page 11266 plaintiff's Exhibit C was a standard notice of right of recision which informed Annette Belbusti of her truth in lending right to rescind the refinance as it pertained to the $100,000 obligation.
Mrs. Belbusti signed at least one other deed and note with Founders Bank during the same time period and her son appears to have had one or more unsecured loans during that time period. Although the line of credit for $100,000 provided that the makers would be given checks to draw against the line, in fact, it is clear that disbursement was made by bank or cashiers check upon the customers request. While there was some confusion at trial concerning which disbursements related to which loans and which repayments related to which loans, the court finds that the balance of $100,000 was disbursed on the home equity line, that interest or that loan amounted to $52,310.41 as of October 7, 1993. That interest in the amount of $1,650.24 accrued between October 7, 1993 and November 30, 1993 and that interest continues to accrue in the amount of $30.56 per day on that loan. The court further finds that the $15,000 loan was disbursed but that no notice of right of recision was given to Mrs. Belbusti in relation thereto. Consequently, the court holds, as agreed to by the parties, that the absence of the right of recision deprives Founders Bank of any entitlement to interest on the $15,000 loan.
John Belbusti testified at trial that on numerous occasions when he requested disbursements on the $100,000 line of credit, bank Vice President Steven Mirabella either demanded gifts or required Belbusti to allow Mirabella to cash the disbursement checks and retain a portion of the proceeds. Mirabella acknowledged that he had utilized Belbusti's assistance in obtaining a washer and dryer at below market cost for a new condominium in 1988, however, it is his belief that he had paid Belbusti's cost for these items. Mirabella denied receiving any other gifts and categorically denied any receipt of kickbacks.
DEFENSES
While the defendant stated her defenses in numerous different ways, her defenses essentially reduced themselves to three claims. Those claims were: 1) failure of consideration; 2) unclean hands on the part of the plaintiff Founders Bank; and 3) no entitlement to interest on the $15,000 loan by reason of the failure to give notice of Right of Recision. CT Page 11267
The plaintiff conceded the third defense and the court has held that no interest in due on the $15,000 loan.
Defendant's problem with the claim of lack of consideration is two-fold. First the evidence is clear that Mrs. Belbusti did receive some of the proceeds of the loan. Secondly, although she is the sole defendant because she alone owned the property, she was a co-maker with her son on the underlying note. The evidence supports the bank's contention that Mrs. Belbusti and her son between them received disbursement of the full $100,000.
It is undoubtedly true that the first $56,928.09 advance under the line of credit was a result of a pre-existing debt of John Belbusti which he had acquired as a result of previous dealings with the bank in partnership with Robert Moran. Defendant argues that Mrs. Belbusti was unaware of this antecedent debt and therefore it should not be charged to her line of credit and should not form part of the consideration for the line. There are two answers to this defense. First, the court is not convinced that Mrs. Belbusti was unaware of some antecedent debt, although she may have been unaware of the specific amount. More importantly whether not she was aware of the debt, while she is the sole defendant in the foreclosure, she was a co-maker with her son on the note. In fact the proper characterization of the transaction which occurred is that the $56,928.09 attributed to the Belbusti and Belbusti note was used to pay off the earlier debt and a recipient of this consideration was unquestionably John Belbusti, a co-maker on the note secured by Mrs. Belbusti's mortgage. Accordingly, the court refuses to find failure of or lack of consideration.
The defendant itemizes numerous truth in lending requirements which she alleges were not complied with by the plaintiff Bank. The court agrees with the defendant that the Founders Bank procedures on its line of credit accounts at this time fail to comply in many respects both with truth in lending requirements and with the express terms of the notes the bank was using. Nevertheless, with the exception of the right to rescind, the general penalty for failure to comply with truth in lending is found in 36-399 and 36-407 of the Connecticut General Statutes and parallel sections of the Federal Statutes and Regulations thereunder. These sections provide both criminal penalties and civil remedies. However, neither of the sections give as a sanction for failure to comply with truth in lending, a restriction against the enforcement of a mortgage lien. Thus while the truth in lending violations may give rights to Annette Belbusti in some CT Page 11268 other action, it is the holding of the court that the failure to follow truth in lending requirements gives Mrs. Belbusti no rights in this foreclosure action other than the extinguishment of the interest on the $15,000 loan.
Finally and most importantly, the defendant claims that the various truth in lending violations combined with the alleged misconduct of Steven Mirabella, the failure to explain documents, and the failure to send required statements, leaves Founders Bank with unclean hands and should deprive it of the right to the equitable relief of mortgage foreclosure. Two recent superior court cases Gateway Bank v. Racquetball Spa Ink. [Inc.],10 Conn. L. Rptr. No. 6, 170 (Nov. 15, 1993); and New England Savings Bank v. High Ridge, Inc., 5 Conn. L. Rptr. 110, (1991) make it clear that "unclean hands" on the part of the plaintiff is not a valid defense to a foreclosure action. Because the court holds unclean hands is not a valid defense, it is unnecessary for the court to evaluate the veracity of Mr. Belbusti's testimony concerning the alleged misconduct of Steven Mirabella. In the opinion of the court, even if Mr. Belbusti's testimony is totally truthful, and the court in no manner makes such a finding, Mr. Mirabella's actions would simply amount to criminal conduct on his part and might entitle Mr. Belbusti to other remedies but they do not serve as the basis to deny foreclosure to Founders Bank. As the Appellate Court has stated in Connecticut Bank Trust v. Kutshe, 40 Conn. Sup. 540
(1986)
 "In short, there was no nexus between the plaintiff's conduct about which the defendants complained [and the default]" . . . at page 565.
Accordingly, the court finds the debt on the $100,000 mortgage be as follows: principal $100,000; interest through October 2, 1993 $52,310.41; interest from October 8, 1993 through November 30, 1993 $1,650.24 per diem following November 30, 1993 $30.56 per day. On the second count the court finds the debt to be $15,000 with no other costs or per diem.
The court awards an attorney's fee in the amount of $7,839.00 and an appraisal fee in the amount of $1,000.00. The court recognizes that the attorney for Founders Bank has submitted an affidavit showing a total attorney's fee in the amount of $9,015.00. The court finds nothing in the affidavit to be unreasonable as to hours expended or hourly billing rate. Nothing in the court's opinion should be interpreted as a holding the CT Page 11269 attorney for Founders Bank is not entitled to be paid by the bank in that amount. However, the affidavit submitted makes no attempt to divide hours expended in foreclosing on count one from hours expended in foreclosing on count two. It is the opinion of the court that because of the absence of notice of recision the bank is not entitled to collect it's attorney's fees for the foreclosure on count two, the $15,000 mortgage. The court holds that the plaintiff is only entitled to recover attorney's fees in the ratio that the $100,000 bear to total principal debt of $115,000. Accordingly, the court has reduced the defendant's share of the attorney's fees, in view of the absence of notice of recision, from $9015.00 to $7,839.00. Since the appraisal of the property would be substantially identical regardless of the number of mortgages foreclosed, the court agrees with the bank that it is entitled to an appraisal fee of $1,000.00.
The court notes that the file contains no written motion for foreclosure by sale, although such a motion may have been made orally at the time of argument. The court further notes that the appraisal on the property is in the amount of $222,000 and finds that to be the fair market value of the property. The court is aware of the fact that if a foreclosure by sale were ordered, there appears to be some equity in the property for Mrs. Belbusti, but the court is equally aware that in the event of a sale, not only would there be additional costs incident to the sale, but the market value of the property for purposes of determining a deficiency would then become the sales price rather than the appraised value. The court fears that in the event of a forced sale in the current market, the property might bring less than the $220,000 appraised value. It is conceivable that if a sale were ordered, Mrs. Belbusti would find herself not only losing her home, but indebted to Founders Bank for a deficiency.
Accordingly, the court orders a strict foreclosure with a law day on July 1, 1994 and subsequent days as required. The court notes that the established fair market value is sufficient to allow the accumulation of per diem in the amount of $30.50 per day and still insure Founders Bank of sufficient security notwithstanding the extended law day.
While the defendant Annette Belbusti is of course free to file any motions authorized by the Practice Book, the court specifically holds that its order of strict foreclosure is without prejudice to the right of Annette Belbusti to file within 30 days of the date of this order, a motion to reargue the limited question of whether the CT Page 11270 foreclosure should be by sale or by strict foreclosure.
The court by,
Kevin E. Booth, Judge